# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CHERRI ANNETTE HILL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:16-CV-597-VEH** |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

## MEMORANDUM OPINION

Plaintiff Cherri Annette Hill ("Ms. Hill") brings this action under 42 U.S.C. §

405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse

decision of the Commissioner of the Social Security Administration

("Commissioner"),[1] who denied her Title II application for Widow's Insurance

Benefits and her Title XVI application for Supplemental Security Income ("SSI").[2]

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Title II Disability Insurance Benefits ("DIB")/Widow's Insurance Benefits or Title XVI SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore,

Ms. Hill timely pursued and exhausted her administrative remedies available before the Commissioner. This case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hill was 51 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 38). She has completed the tenth grade and received her general education degree ("GED"). (Tr. 38-39). Her past relevant work experience includes employment as a cashier and an electronics assembler. *Id.* Ms. Hill initially claimed she became disabled beginning February 15, 2005. (Tr. 165). Her last period of work ended in 2002. (Tr. 38).

On June 26, 2009, Ms. Hill protectively filed a Title II application for a period of disability and Widow's Insurance Benefits. (Tr. 69). She also protectively filed a Title XVI application for SSI on that date. *Id.* The ALJ reached a decision on July 14, 2011. *Id.* That decision was appealed and review was denied by the Appeals Council on January 17, 2013. (Tr. 81). Ms. Hill did not appeal from the July 14, 2011, ALJ decision. On April 18, 2013, Ms. Hill protectively filed her second Title II application for a period of disability and Widow's Insurance Benefits. (Tr. 165). She also

_____

citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

protectively filed her second Title XVI application for SSI on that date. (Tr. 173). Ms. Hill amended the onset date of her disability to April 1, 2010. (Tr. 13). On May 23, 2013, the Commissioner initially denied these claims. *Id.* Ms. Hill timely filed a written request for a hearing on June 25, 2013. *Id.* On August 6, 2014, the ALJ conducted a video hearing. *Id.* The ALJ presided over the hearing from Franklin, Tennessee while Ms. Hill appeared in Decatur, Alabama. *Id.* On September 16, 2014, the ALJ issued an unfavorable decision concluding that Ms. Hill was not disabled and denying her claims. (Tr. 13-27). Ms. Hill timely petitioned the Appeals Council to review the decision on October 8, 2014. (Tr. 8). On February 10, 2016, the Appeals Council issued a denial of review on Ms. Hill's claims. (Tr. 1-4).

Ms. Hill filed a Complaint with this court on April 13, 2016, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on July 27, 2016. (Doc. 6). Ms. Hill filed a supporting brief (doc. 8) on September 9, 2016, and the Commissioner responded with an opposing brief (doc. 9) on October 11, 2016. Ms. Hill then followed with a reply (doc. 10) to the Commissioner's brief on October 25, 2016.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner

is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 15, 2017.

national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

To qualify for benefits as a disabled widow under the Regulations of the Social Security Act, the claimant must meet the definition of "disabled," and must establish that she is at least 50 years of age and the widow of a wage earner who died fully insured. *Sullivan v. Weinberger*, 493 F.2d 855, 857 (5th Cir. 1974) (citations omitted). The prescribed period of eligibility to receive benefits as a disabled widow under the Social Security Act is seven years from the month of the insured wage earner's death. *Id.*

# FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.  It was previously found that [Ms. Hill] is the unmarried widow of the deceased-insured worker and has attained the age of 50. [Ms. Hill] met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. (Tr. 16).

2.  The prescribed period ends on July 31, 2019. *Id.*

3.  [Ms. Hill] has not engaged in substantial gainful activity since April 1, 2010, the amended alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). *Id.*

4.  [Ms. Hill] has the following severe impairments: degenerative disc disease, fibromyalgia, post-traumatic stress disorder (PTSD), and major depressive disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)). *Id.*

5.  [Ms. Hill] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920 (d), 416.925 and 416.926). *Id.*

6.  After careful consideration of the entire record, the [ALJ] finds that [Ms. Hill] has the residual functional capacity ("RFC") to perform light work defined in 20 C.F.R. §§ 404.1567(b) and 416.967 (b). [Ms. Hill] can climb no ladders, ropes, or scaffolds but can frequently perform all other postural activity. [Ms. Hill] is limited to frequently reaching overhead. [Ms. Hill] should avoid concentrated exposure to hazards. [Ms. Hill] can understand, remember, and carry out simple tasks. [Ms. Hill] can maintain concentration, persistence, and pace for such tasks in two hour intervals with breaks spread throughout the day. [Ms.

Hill] can interact with others occasionally and can adapt to occasional changes in the workplace. (Tr. 18).

7.  [Ms. Hill] is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965). (Tr. 25).

8.  [Ms. Hill] was 46 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date. [Ms. Hill] subsequently changed age category to closely approaching advanced age (20 C.F.R. §§ 404.1563 and 416.963). *Id.*

9.  [Ms. Hill] has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964). *Id.*

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Ms. Hill] is "not disabled," whether or not [Ms. Hill] has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). *Id.*

11. Considering [Ms. Hill]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Ms. Hill] can perform (20 C.F.R. §§ 404.1569, 404.1569(a), and 416.969(a)). *Id.*

12. [Ms. Hill] has not been under disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)). (Tr. 26).

## ANALYSIS

### I.   The ALJ Committed Reversible Error in Formulating Ms. Hill's Mental Residual Functional Capacity.

The ALJ has a basic obligation to develop a full and fair record of the

claimant's medical history. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This obligation exists regardless of whether the claimant is represented by counsel. *Id.*(citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). The ALJ is required "to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (internal quotation marks omitted) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *Gold v. Secretary of Health, Education, & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). In the Eleventh Circuit, an ALJ has failed in developing a claimant's medical record: (1) when the ALJ does not clearly explain the weight accorded to the various testimony or evidence considered, *Cowart*, 662 F.2d at 735; or (2) when the ALJ fails to order an examination of the claimant by a consultative physician when necessary for the ALJ to make an informed decision. *McGee v. Weinberger*, 518 F.2d 330, 332 (5th Cir. 1975) (citing *Long v. Richardson*, 334 F.Supp. 305 (W.D.Va. 1971)).[5, 6]

---

[5] *McGee* was decided on August 29, 1975. The Fifth Circuit split did not occur until October 1, 1981. Therefore, *McGee* is binding authority on this court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[6] These two situations referenced are not the exclusive ways in which the Eleventh Circuit has ruled that an ALJ has failed in developing the claimant's medical record.

**A.    The ALJ Failed To State Adequate Reasons for Discounting Portions of Dr. Lois Petrella's Consultative Psychological Opinion and GAF Score.**

Failure to explain the weight given to different medical opinions by the ALJ is reversible error. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) ("In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor." (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986))); *see also Vuxta v. Commissioner of Social Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006) ("Since the ALJ did not give controlling weight to the opinion of a treating physician, she was required to explain the weight given to the opinions of the non-examining state psychologists[.]").[7]

On April 23, 2013, Dr. Lois Petrella ("Dr. Petrella") conducted a consultative psychological examination of Ms. Hill at the request of the Social Security Administration. (Tr. 20). The ALJ's decision states:

> Dr. Petrella conducted a mental status examination, noting <u>generally fair to good functioning</u>.[Dr. Petrella] observed that, contrary to [Ms. Hill]'s reports, she had good grooming and hygiene. She observed [Ms. Hill] to have a mood that fluctuated between depression and anxiety, with tense, nervous, and teary affect. Dr. Petrella noted that [Ms. Hill]'s <u>attention and concentration was fair to good</u>, as she spelled "world"

---

[7] In the Eleventh Circuit, unpublished decisions are not binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

backward, solved simple arithmetic problems involving two operations and making change, and completed three correct rotations of serial threes. The psychologist reported that [Ms. Hill]'s <u>memory was fair to good</u>, as she correctly recalled five digits forward and three backward, recalled the names of two of three common objects after five minutes, and adequately related her daily activities and history. Dr. Petrella stated that [Ms. Hill]'s <u>fund of information was fair</u>, as she knew the name of the current President of the United States of America but not the former one, though she knew the number of weeks in a year. The psychologist reported that [Ms. Hill]'s <u>abstraction ability was good</u> because she could group like objects into common categories and interpret simple parables. She judged [Ms. Hill] to have <u>fair insight, judgment, and reasoning and estimated her to have an average intelligence</u>. Dr. Petrella diagnosed [Ms. Hill] with PTSD, chronic, and major depressive disorder, recurrent, severe, without psychotic features (Ex. B3F).

(Tr. 20-21) (emphasis added).

After discussing several of Dr. Petrella's findings which bolster the ALJ's determination of "not disabled," the ALJ ultimately assigned only little weight to Dr. Petrella's opinion, describing it as "vague" and including "language inappropriate for [a] residual functional capacity determination."

<u>Dr. Petrella's opinion also is given little weight</u>. Dr. Petrella opined a <u>global assessment of function (GAF) score of 45 to 50</u> at the time of the examination. The psychologist opined that [Ms. Hill] had "severe" mental impairment[s] but could manage financial benefits and independent functioning. She noted that [Ms. Hill]'s activities were restricted, her interests constricted, and her ability to relate to others impaired. Dr. Petrella opined that [Ms. Hill] would not have significant difficulty with simple instructions but would probably have problems with detailed/complex instructions as of the time of the examination. The psychologist opined that [Ms. Hill] would have problems dealing with coworkers and supervisors and pressures in a work setting due to

depression and anxiety (Ex. B3F). Dr. Petrella conducted a one-time
examination of [Ms. Hill]. However, <u>the opinion is not fully supported
or explained, as the opinion contains vague statements and language
inappropriate for residual functional capacity determination</u>. Therefore,
the opinion is given little weight.

(Tr. 24) (emphasis added). The weight the ALJ assigned to Dr. Petrella's opinion is

inconsistent with the ALJ's apparent reliance upon several of Dr. Petrella's specific

findings that support her decision to deny Ms. Hill benefits. In light of the ALJ's

discrediting of the disability-favoring opinion of Ms. Hill's treating physician, Dr.

Rodney Morris ("Dr. Morris"), additionally, the court finds that the ALJ did not

adequately address her reasons for assigning only limited weight to Dr. Petrella's

opinion.[8]

When analyzing a physician's medical opinion, the ALJ must "state specifically

the weight accorded to each item of evidence and why he reached that decision."

*Cowart*, 662 F.2d at 735. "In the absence of such a statement, it is impossible for a

reviewing court to determine whether the ultimate decision on the merits of the claim

is rational and supported by substantial evidence." *Id.*

"The [ALJ] must take into account and evaluate the record as a whole."

*McCruter v. Bowens*, 791 F.2d 1544, 1548 (11th Cir. 1986) (citing *Martin v. Heckler*,

---

[8] This means that the ALJ's determination of Ms. Hill's mental residual functional
capacity lacks substantial support from any examining source as discussed *infra*.

748 F.2d 1027, 1032 (5th Cir. 1984)). In *McCruter v. Bowens*, the Eleventh Circuit held that an ALJ's decision is not supported by substantial evidence when the decision is reached "by focusing upon only one aspect of the evidence and ignoring other parts of the record." 791 F.2d at 1548. It is insufficient for an ALJ to rely upon certain supportive evidence but to disregard contrary evidence. *Id.*; *see also McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (holding that the ALJ was required to determine what weight, if any, would be placed on a claimant's global assessment of function ("GAF") score).[9] In *McCloud*, the court found error when the ALJ either failed to explicitly state the weight given or completely disregarded the claimant's GAF scores. *Id.*

In the present case, after giving Dr. Petrella's opinion limited weight, the ALJ referenced Ms. Hill's GAF score of 45 to 50.[10] (Tr. 24). The ALJ made no further

---

[9] "Axis V [of the Multiaxial Assessment] is for reporting the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* [hereinafter *DSM-IV-TR*] at 32, American Psychiatric Association (4th ed. text revision, 2000). "This [functional] information is useful in planning treatment and measuring its impact, and in predicting outcome." *Id*. GAF stands for "Global Assessment of Functioning" and the "GAF Scale" may be used to report such "overall functioning." *Id*. "The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. ... [and] is divided into 10 ranges of functioning." *Id*. The most recent edition of the *Diagnostic and Statistical Manual of Mental Disorders* [hereinafter *DSM-5*], American Psychiatric Association (5th ed. 2013), has dropped the GAF Scale and included a different global functioning measure–"the WHO Disability Assessment Schedule (WHODAS) ..." *DSM-5* at 16.

[10] A GAF of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *DSM-IV-TR* at 34.

mention of this very low range of scoring and never expressly accepted or rejected Ms. Hill's GAF score. While the GAF Scale is no longer a diagnostic measure relied upon by the *DSM-5* (as discussed *supra*), the ALJ's reference to Ms. Hill's GAF score, without explanation, further produces a lack of clarity (analogous to *McCloud* discussed *supra*, and to *Lewis* discussed *infra*) in the evidence relied upon by the ALJ in discrediting Dr. Petrella and in formulating Ms. Hill's RFC. Without referencing any specific evidence in the record, the ALJ merely stated that Dr. Petrella's opinion was vague and not fully supported or explained. *Id.*

In relying upon Dr. Petrella's statements of fair to good functioning while disregarding Ms. Hill's GAF score and other findings supporting Ms. Hill's severe psychological impairments, the ALJ erroneously focused on a limited portion of the evidence from Dr. Petrella's examination and ignored the remainder in reaching her determination.

> As a result, the court is left to speculate as to the evidence relied upon to support the ALJ's reasoning and, in turn, the sufficiency of that evidence. While the substantial evidence standard is a highly deferential one, the appellate review process, nonetheless, demands an administrative decision that removes the need for guesswork. *See Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) ("A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful.").

*Lewis v. Social Security Administration*, No. 2:16-CV-00181-VEH, (Doc. 12 at 11)

(N.D. Ala. Mar. 27, 2017).[11] Due to the ALJ's inadequate explanation of her reasons for assigning limited weight to Ms. Hill's GAF score and to Dr. Petrella's overall opinion of Ms. Hill's psychological impairments, while inconsistently relying upon portions of that opinion that support the ALJ's decision, the ALJ's decision is not supported by substantial evidence.

### B. The ALJ Lacked Sufficient Evidence To Make an Informed Decision Regarding Ms. Hill's Mental Residual Functional Capacity.

To the extent that the ALJ adequately discredited Dr. Petrella's medical opinion and Ms. Hill's treating physician's opinion, the ALJ lacked sufficient evidence of the vocational impact caused by Ms. Hill's psychological impairments to make a mental functioning assessment supported by substantial evidence. Although a consultative examination is not specifically required by statute, the Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *See McGee*, 518 F.2d at 332 (holding that "[i]f the ALJ does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence" and must be remanded for additional evidence).

---

[11]  In *Lewis*, this court found that the ALJ's reference of the claimant's GAF scores, without expressly accepting or rejecting the scores, was improper. The court finds *Lewis* analogous to the present case regarding the ALJ's treatment of Ms. Hill's GAF score.

In *Dillard v. Astrue*, the district court held that the ALJ erred by not ordering an additional consultative examination to determine the claimant's RFC. 834 F. Supp. 2d 1325, 1332-33 (S.D. Ala. 2011) ("[T]he Commissioner's fifth-step burden cannot be met by a <u>lack of evidence</u> or, where available, <u>by the [RFC] assessment of a non-examining, reviewing physician</u>; instead, this <u>fifth-step burden must be supported by the [RFC] assessment of a treating or examining physician</u>.") (emphasis added).[12]

> Such an assessment [is particularly] warranted where, as here, the ALJ has a heightened duty to develop a full and fair record of an unrepresented claimant and has rightly rejected the only RFC assessment in the record[.] ... [S]ubstantial evidence in support of such RFC determination necessarily must include an RFC assessment by a treating or examining physician. Without such evidence, all this [c]ourt perceives is mere conjecture and intuition by the ALJ[.]

*Id*. In *Dillard*, the ALJ assigned limited weight to the opinion of a non-treating physician when new evidence of the claimant's continued treatment was submitted that diminished the value of the non-treating physician's prior assessment. *Id.* at 1333. Although the limited weight assigned by the ALJ was proper, the district court found error where the ALJ failed to order a consultative physician to develop the claimant's medical record. *Id.* In light of the claimant's treatment for knee and back pain and the receiving of new prescriptions for pain medication subsequent to the

---

[12] Although *Dillard v. Astrue* is non-binding authority in the Northern District of Alabama, the court finds the facts to be analogous to this case and, consequently, its holding persuasive.

most recent RFC assessment in the claimant's record, the district court found remand was necessary to make further inquiry in determining the claimant's RFC. *Id.* at 1333-34.

In the present case, the ALJ relied upon the opinion of a non-examining, consultative physician, Dr. Robert Estock ("Dr. Estock"), in determining the impact of Ms. Hill's psychological impairments on her RFC. (Tr. 24-25). Dr. Estock gave his consultative opinion on May 23, 2013. (Tr. 100-12). In the time between Dr. Estock's opinion (Tr. 100-12), and the ALJ hearing on August 6, 2014 (Tr. 13), Ms. Hill continued receiving treatment for her physical and mental impairments. (*See* Tr. 408 (Ms. Hill receiving treatment at Central North Alabama Health Services, Inc. ("CNAHS") on March 7, 2014; physician's notes are illegibly written)), (*see* Tr. 407 (same on April 4, 2014)), (*see* Tr. 406 (same on May 2, 2014)), (*see* Tr. 405 (same on May 30, 2014)), (*see* Tr. 404 (same on June 27, 2014)), (*see* Tr. 403 (same on August 1, 2014)).[13]

Due to the ALJ's discrediting the opinions of Drs. Morris and Petrella, the court finds the facts of *Dillard* analogous to the present case because of the extensive

---

[13] The court provides these references to the administrative record to illustrate instances when Ms. Hill sought treatment in the fifteen month time period between Dr. Estock's opinion and the ALJ hearing. This is not an exhaustive list of Ms. Hill's treatment records/medications during this time period.

time period and treatment record between the most current medical opinion regarding the claimant's RFC and the ALJ hearing. Because the ALJ assigned limited weight to the opinions of the two examining physicians, Drs. Morris and Petrella, the record lacks a medical opinion suitable for the ALJ to make an informed decision regarding Ms. Hill's mental RFC in light of the mental health treatment she received over the fifteen month period prior to the ALJ hearing.

In contrast, the Eleventh Circuit has held that additional expert testimony/examination is unnecessary when the record includes the opinions of several credited treating and non-treating physicians. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir.1999) (per curiam) ("On the contrary, the record, which included the opinions of several physicians including that of Dr. Cameron Tebbi who treated [the claimant], was sufficient for a decision and additional expert testimony was unnecessary."); s*ee also Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006) ("[T]he ALJ did not err in refusing to order a consultative examination ... because the record contained extensive medical records about [the claimant's] physical and mental complaints.").

In the present case, the ALJ found Ms. Hill's depression and post-traumatic stress disorder to be severe impairments. (Tr. 16). With the opinions of Dr. Petrella and Ms. Hill's treating physician discounted, the only opinion in the record that

supports the ALJ's RFC determination pertaining to Ms. Hill's severe psychological impairments is that of a non-examining/reviewing physician, Dr. Estock. (Tr. 24-25). Similar to the court in *Dillard*, the court finds that the opinion of Dr. Estock, without more, is insufficient for the ALJ to have made an informed decision supported by substantial evidence regarding Ms. Hill's psychological impairments.

The Commissioner's brief cites to an unpublished opinion stating that "[c]ontrary to [Ms. Hill]'s contentions, an ALJ may rely on a non-examining physician's report in making a disability determination." *Randolph v. Astrue*, 291 F. App'x 979, 982 (11th Cir. 2008) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584–85 (11th Cir. 1991)). (Doc. 9 at 6). This statement, while technically correct, is only a partial reading of the holding from *Randolph*. More completely, *Randolph* states that "an <u>ALJ can rely on a non-examining physician's report</u> in denying disability insurance benefits <u>where the non-examining physician's report does not contradict information in the examining physician's reports.</u>" 291 F. App'x at 982 (emphasis added).

Contrary to the contention implied by the Commissioner's statement, the holding from *Randolph* does not permit the ALJ to rely <u>solely</u> on the opinion of a non-examining physician that is contradicted by an examining physician. The situation in *Randolph* is not analogous to the facts of the present case. Instead,

because Dr. Estock is a non-examining physician whose opinion contradicts Ms. Hill's examining physicians' reports, the ALJ may not base his mental RFC determination exclusively upon Dr. Estock's non-examining opinion. *See Edwards*, 937 F.2d at 584–85.

In support of the ALJ's decision, the Commissioner also cites to *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). The Commissioner's brief states that the "Eleventh Circuit will remand for further development of the evidentiary record where the record contained 'evidentiary gaps which result in unfairness or clear prejudice.'" *Id*. (Doc. 9 at 13-14). The Commissioner's brief states that Ms. Hill has made no such showing of any unfair or prejudicial evidentiary gaps. (Doc. 9 at 13-14). While the Commissioner's description of *Brown* is accurate, the court finds that *Brown* does not apply to the present case. In *Brown*, the Eleventh Circuit held that:

> The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from this case would sustain Brown's contentions of her inability to work. In the absence of proof to the contrary, however, we must assume that it does lend credence to [the claimant's] allegations.

44 F.3d at 935-36.

In the present case, Dr. Estock formed his non-examining, consultative medical opinion by reviewing Ms. Hill's medical records in May of 2013. (Tr. 100-12). Ms.

Hill's administrative disability hearing was held in August of 2014. (Tr. 13). Apart from Ms. Hill's treating physician who was discredited by the ALJ, the record shows no other medical professionals examining Ms. Hill's psychological condition or reviewing her medical records for the purpose of formulating her mental RFC in the fifteen months between Dr. Estock's evaluation and the ALJ hearing.[14] Because the ALJ discredited the opinions of Drs. Morris and Petrella (both of which supported finding Ms. Hill disabled), the record contains, in effect, an evidentiary gap that is unfair to Ms. Hill. Further, given that the evidentiary gap was created by the ALJ's treatment of the medical opinions, there is no basis to find Ms. Hill not disabled under *Brown*. Further, the explicit holding from *Brown v. Shalala* (referencing a period of a complete lack of medical records) is simply inapplicable to the present case.

In discrediting the opinion of Ms. Hill's treating physician and assigning limited weight to the opinion of Dr. Petrella, the ALJ lacked sufficient medical evidence to determine Ms. Hill's disability status regarding her psychological impairments.[15] Therefore, the court holds that the ALJ's decision is not supported by

---

[14] The record shows that Dr. Petrella's examination of Ms. Hill occurred before Dr. Estock conducted his consultative assessment. However, the record is unclear as to whether Dr. Estock considered Dr. Petrella's findings (including Ms. Hill's GAF score) in formulating his assessment of Ms. Hill's mental impairments. (Tr. 100-12).

[15] To the extent that the ALJ appropriately gave significant weight to Dr. Estock's non-examining opinion, the record is unclear as to whether Dr. Estock considered, or had access to, all of Ms. Hill's medical treatment records. Therefore, Dr. Estock's conclusions cannot serve as

substantial evidence for this additional reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision was not supported by substantial evidence.[16] The ALJ discounted or disregarded medical opinions and evidence without providing sufficient justification. Further, the ALJ lacked sufficient evidence to make an informed decision regarding Ms. Hill's mental RFC. Accordingly, the decision will be reversed and remanded with such directions by separate order.

**DONE** and **ORDERED** this the 3rd day of August, 2017.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

substantial evidence to support the ALJ's decision.

[16] Because the court finds that the ALJ's determination of "not disabled" was not based on substantial evidence for the foregoing independent reasons, the court does not reach Ms. Hill's additional arguments raised on appeal.